IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-01283-PSF-PAC

MARK JORDAN,

      Plaintiff,

v.

MARY H. SOSA, ADX Florence Acting Inmate Systems Manager,
ROBERT A. HOOD, ADX Florence Warden,
(FIRST NAME UNKNOWN) TUCKER, FCI Englewood Inmate Systems Officer,
ANGELA SHENK, FCI, Englewood Inmate Systems Managerm
J.L. NORWOOD, USP Victorville Warden, In their individual and official capacities, and
W.A. SHERROD, FCI Englewood, Warden, In his official capacity,

      Defendants.

---

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE
## ENTERED JUNE 21, 2006

---

This matter is before the Court on the Recommendation of the Magistrate Judge

(Dkt. # 65), entered on June 21, 2006, recommending denial of defendants' Partial

Motion to Dismiss (Dkt. # 24), filed on October 18, 2005, and defendants' Motion to

Dismiss (Dkt. # 37), filed on November 25, 2005.  The Recommendation advised

defendants that they had ten days after service within which to file written objections to

any part of the Recommendation, or otherwise waive *de novo* review of the matter

under F.R.Civ.P. 72(b).  More than 30 days have elapsed and no objection has been

filed.

## I.     BACKGROUND

Plaintiff Mark Jordan is a prisoner at the Bureau of Prisons' ("BOP")

administrative maximum security facility in Florence, Colorado.  He is incarcerated in

the Bureau of Prisons "Supermax" institution for bank robbery and the stabbing death

of another inmate.  He challenges the facial constitutionality of the "Ensign

Amendment," originally enacted as part of the Omnibus Consolidated Appropriations

Act of 1997, now codified at 28 U.S.C. § 530C(b)(6).  The Ensign Amendment bars the

use of BOP funds to pay for the distribution of commercial material that "is sexually

explicit or features nudity."  28 U.S.C. § 530C(b)(6).  Plaintiff alleges that the Ensign

Amendment violates the First Amendment and the Fifth Amendment Due Process

Clause.

Plaintiff also challenges the constitutionality of 28 C.F.R. § 540.72 ("the

regulation").  BOP adopted the regulation to implement the Ensign Amendment.

It narrowly defines the key terms of the Amendment.  "Nudity" means "a pictorial

depiction where genitalia or female breasts are exposed."  28 C.F.R. § 540.72(b)(2).

"Features" means that "the publication contains depictions of nudity or sexually explicit

conduct on a routine or regular basis or promotes itself based upon such depictions in

the case of the individual one-time issues."  28 C.F.R. § 540.72(b)(3).  However,

material containing "nudity illustrative of medical, educational, or anthropological

content" are excepted.  *Id.*  "Sexually explicit" means "a pictorial depiction of actual

or simulated sexual acts including sexual intercourse, oral sex, or masturbation."

28 C.F.R. § 540.72(b)(4).  The regulation also directs that "commercially published

2

information or material that is sexually explicit or features nudity" should be returned to the publisher or sender.  28 C.F.R. § 540.72(a).  Under these regulations, there is no restriction on nonpictorial sexually explicit material.

Plaintiff challenges the constitutionality of the regulation (Complaint ¶¶ 29-49). Plaintiff asserts that defendants' application of the Amendment and its implementing regulation denied him access to eight specific publications.  He alleges this violated his First Amendment rights (Complaint, Claims  4 through 11).

Plaintiff has exhausted his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  He filed his motion for leave to file his complaint pursuant to 28 U.S.C. § 1915 on June 27, 2005 and the complaint was accepted for filing on July 12, 2005.  After an interim order was entered dismissing defendants in their individual capacities and for damages (Dkt. # 61), the complaint now seeks only declaratory and injunctive relief.

Defendants have filed two motions to dismiss the complaint for failure to state a claim upon which relief can be granted.  One filed on October 18, 2005 (Dkt. # 24), seeks dismissal of the First, Second and Third Claims, and one on November 25, 2005 (Dkt. # 37) seeks dismissal of claims Four through Eleven.  Both motions were referred to the Magistrate Judge for recommendation.

## II.    APPLICABLE STANDARDS

The Court has considerable discretion with respect to the treatment of unchallenged magistrate reports.  *Summer v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).  "In the absence of timely objection, the district court may review a magistrate's

report under any standard it deems appropriate." *Id.  See also* 18 U.S.C. § 636(b)(1)

("A judge of the court may accept, reject, or modify, in whole or in part, the findings and

recommendations made by the magistrate judge.").

## III.    ANALYSIS

The Magistrate Judge recommends denying both motions for the reason that at

this juncture defendants failed to produce evidence identifying specific rehabilitation

goals and failed to demonstrate any rational connection between the goal and the

Amendment and the  challenged regulations.  In reaching this result, the Magistrate

Judge considered the conflict between two circuit opinions, *Amatel v. Reno*, 156 F.3d

192 (D.C. Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999), in which the District of

Columbia Circuit upheld the constitutionality of the Ensign Amendment and implicitly if

not directly the regulations promulgated to implement the statute, and the Third Circuit

opinion in *Ramirez v. Pugh*, 379 F.3d 122 (3d Cir. 2004), which reversed a district court

opinion granting the government's motion to dismiss a prisoner's complaint challenging

the Ensign Amendment and the regulations promulgated thereunder.

*Amatel* found that the Ensign Amendment and the regulations thereunder,

although ostensibly infringing on the prisoner's constitutional rights, satisfied the first

prong of the requirements set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), which in

the context of prison life requires a valid, rational connection between such a

constitutional restriction and a legitimate governmental interest.  The *Amatel* majority

rejected the inmates' constitutional challenge, finding the restriction on the distribution

of sexually explicit material to be reasonably related to the penological interest of

prisoner rehabilitation.  156 F.3d at 202-03.  The opinion acknowledged that there was no "record evidence" to support its "belief" that there was a connection between proscribing pornography and legitimate rehabilitative values, but states that "common sense" was sufficient to verify the rational connection between the proscription and the asserted rehabilitative goal, stating for example, that "[c]ommon sense tells us that prisoners are more likely to develop the now-missing self-control and respect for others if prevented from poring over pictures that are themselves degrading and disrespectful."  156 F.3d at 199.

*Ramirez*, on the other hand, holds that "common sense" alone is not sufficient to establish the rational connection between the BOP regulations under the Ensign Amendment and the government's legitimate penological interest in rehabilitation. Distinguishing the case before it from a prior Third Circuit decision in which it upheld a state statute restricting prisoner access to pornographic materials at a facility for sex offenders who exhibited "repetitive and compulsive behavior" using the *Amatel* common sense approach, *Waterman v. Rogers*, 183 F.3d 208 (3d Cir. 1999), the *Ramirez* panel stated:

> While the connection may be a matter of common sense in certain instances, such that a ruling on this issue based only on the pleadings may be appropriate, there may be situations in which the connection is not so apparent and does require some factual development.  Whether the requisite connection may be found solely on the basis of "common sense" will depend on the nature of the right, the nature of the interest asserted, the nature of the prohibition, and the obviousness of its connection to the proffered interest. The showing required will vary depending on how close the court perceives the connection to be.

5

379 F.3d at 127-28.  Thus the *Ramirez* panel suggested that while the connection may be obvious in a situation like that presented in the *Waterman* case, "that connection becomes attenuated upon consideration of the entire population of BOP inmates, such that a factual record becomes necessary for determining the rationality of the amendment's overall connection to rehabilitative interests."  *Id.* at 128.  Accordingly, the Third Circuit panel remanded that case with directions that the district court "identify with particularity the specific rehabilitative goals advanced by the government to justify the restriction at issue, and then give the parties the opportunity to adduce evidence sufficient to enable a determination as to whether the connection between these goals and the restriction is rational under *Turner*."  *Id.*

While this Court at first blush cannot disagree with the "common sense" conclusion advanced in *Amatel,* it may well be the better practice where the challenged regulations are apparently being applied to all prisoners to follow the approach endorsed in *Ramirez.*  Under that approach, the Bureau must articulate penological interests to support the regulations at issue.  *See e.g. Jewell v. Gonzales*, 420 F. Supp. 2d 406, 418-20 (W.D. Pa. 2006).  Although the proof standard may not be high, perhaps a focused review of the record might refute what is ostensibly a common sense conclusion.  Here, for example, plaintiff was not convicted of a sex offense and is otherwise subject to the most rigorous security prohibitions in the federal prison system.  A more complete record, something the government does not oppose apparently, would be helpful to the Court and perhaps on appeal.  The Court cannot under F.R.E. 201 take judicial notice of key adjudicative facts of this case.  Given the

conflict between the Third Circuit and the District of Columbia Circuit and no controlling authority in this, the Tenth Circuit, the undersigned cannot say that the Magistrate Judge erred.  Thus, the Court accepts the approach of the Magistrate Judge to which defendants have not objected.

In applying *Ramirez*, the Magistrate Judge correctly found the government has yet to come forward with evidence to establish the relationship between the restriction and the stated rehabilitation goal.  As the Magistrate Judge stated, in applying *Ramirez*, the government must describe the specific rehabilitative goal(s) furthered by the restriction on publications containing sexually explicit material and featuring nudity and explain how the stated rehabilitative interest is facilitated by the broad ban.  *See* 379 F.3d at 129.  The government need only show that the relationship between the restriction and the stated rehabilitation goal is not "so remote as to render [it] arbitrary or irrational," citing to *Turner v Safley*, 482 U.S. 78, at 89-90 (1987).  On the present record, however, the government has as of yet failed to make this preliminary showing.

The Magistrate Judge also recommends denial of the motion to dismiss the fourth through eleventh claims, because, as an initial matter, the court must determine the facial constitutionality of the Ensign Amendment and the BOP's implementing regulation before it can assess the merits of plaintiff's "as applied" constitutional challenges.  This Court cannot say the Magistrate Judge's ruling was clearly erroneous or contrary to law by so holding.

Accordingly, the Court accepts the Recommendation of the Magistrate Judge and denies both of the defendants' motions to dismiss.

**CONCLUSION**

The Court accepts the Recommendation of the Magistrate Judge.  Pursuant

to that recommendation, defendants' Partial Motion to Dismiss (Dkt. # 24), filed on

October 18, 2005, and defendants' Motion to Dismiss (Dkt. # 37), filed on November

25, 2005, are DENIED.

DATED: November 9, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge