IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 05-cv-01283-EWN-PAC

MARK JORDAN,

      Plaintiff,

v.

MARY H. SOSA, ADX Florence Acting Inmate Systems Manager,
ROBERT A. HOOD, ADX Florence Warden,
(FIRST NAME UNKNOWN) TUCKER, FCI Englewood Inmate Systems Officer,
ANGELA SHENK, FCI, Englewood Inmate Systems Manager,
J.L. NORWOOD, USP Victorville Warden, In their individual and official capacities, and
W.A. SHERROD, FCI Englewood, Warden, In his official capacity,

      Defendants.

---

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

---

      This matter was tried to the Court on July 7-8, 2008. Plaintiff appeared *pro se* via a video conference link from the United States Penitentiary-Administrative Maximum ("ADX") in Florence, Colorado. He presented his case through several witnesses, including his own testimony, and introduced several exhibits. The defendants presented their case through the cross-examination of plaintiff's witnesses, and called an expert witness, Dr. Andres E. Hernandez. Pursuant to Rule 52(a), F.R.Civ.P., I now make the following findings of facts and conclusions of law.

## I. BACKGROUND

      Plaintiff, Mark Jordan, a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), currently confined at the United States Penitentiary-Administrative

Maximum ("ADX") in Florence, Colorado, challenges the constitutional validity, both

facially and as applied to him, of 28 U.S.C. §530C(b)(6) ("Ensign Amendment"), and its

implementing regulation, 28 C.F.R. §540.72(a).

The portion of the Ensign Amendment relevant to this action provides:

> Funds available to the Attorney General for the Federal Prison System
> may be used . . . except that no funds may be used to distribute or make
> available to a prisoner any commercially published information or material
> that is sexually explicit or features nudity.

28 U.S.C. §530C(b)(6).

The portion of the federal regulation implementing the Ensign Amendment at

issue in this action provides:

> When commercially published information or material may not be
> distributed by staff or made available to inmates due to statutory
> restrictions (for example, a prohibition on the use of appropriated funds to
> distribute or make available to inmates information or material which is
> sexually explicit or features nudity), the Warden or Designee shall return
> the information or material to the publisher or sender.  The Warden or
> designee shall advise the publisher or sender that an independent review
> of the decision may be obtained by writing to the Regional Director within
> 20 days of receipt of the notification letter. Staff shall provide the inmate
> with written notice of the action.

28 C.F.R. § 540.72(a).

Subsection (b) of the regulation defines four of the terms used in subsection (a),

and in the Ensign Amendment, as follows:

> b) Definitions. For the purpose of this section:

> > (1) Commercially published information or material means any book,
> > booklet, pamphlet, magazine, periodical, newsletter, photograph or other
> > pictorial depiction, or similar document, including stationery and greeting
> > cards, published by any individual, organization, company, or corporation

2

which is distributed or made available through any means or media for a commercial purpose. This definition includes any portion extracted, photocopied, or clipped from such items.

(2) Nudity means a pictorial depiction where genitalia or female breasts are exposed.

(3) Features means the publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues. Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.

(4) Sexually explicit means a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation.

28 C,.F.R. § 540.72(b).

In Claims One and Three of his complaint (Dkt. # 3), plaintiff alleges that the Ensign Amendment (Claim One) and its implementing regulation (Claim Three) violate the First Amendment because they are not reasonably related to a legitimate penological interest, bear no valid, rational connection to a legitimate penological interest, restrict the receipt of mail solely because its content is sexual, are exaggerated responses to any interest asserted, sweep more broadly than necessary to achieve any legitimate penological interest, and lack the requisite individualized determinations that a particular publication rejection advances legitimate penological interests.

In Claim Two, plaintiff alleges that the Ensign Amendment, both facially and as administered, violates the Fifth Amendment's Due Process Clause because (1) rejection of information and material thereunder lack individualized determinations that a particular publication rejection is reasonably related to a legitimate penological interest,

and thereby prohibits federal inmates from receiving through the mail commercially published information and material that is sexually explicit or features nudity even when that information or material poses no threat to a legitimate penological interest, and (2) because publications rejected under the Ensign Amendment are not retained for administrative review and release to successful appellants.

In Claims Four, Five, Six and Eight, plaintiff alleges that the Ensign Amendment violates the First Amendment as applied to prohibit his receipt of specific publications.

Specifically, Claim Four relates to the February 26, 2003 rejection of a publication called *Divas and Lovers–The erotic art of Studio Manasse*; Claim Five relates to the April 15, 2004 rejection of the May/June 2004 issue of a publication called *JUXTAPOZ* magazine; Claim Six relates to the May 21, 2004 rejection of the July/August 2004 issue of *JUXTAPOZ* magazine; Claim Eight relates to the August 15, 2004 rejection of a book titled *Kama Sutra (2nd)*, distributed by Mosaico Books.

Plaintiff filed the requisite internal grievances regarding these rejections and it is undisputed that he has exhausted the administrative remedies available through the BOP's administrative process.

Plaintiff requests a declaration that the Ensign Amendment and its implementing regulation violate his constitutional rights under the First and Fifth Amendments, permanent injunctive relief barring their further application to him, and costs (Final Pretrial Order at 11).

## II. Findings of Facts

I find that the following facts are stipulated to, or are established by a preponderance of the evidence.

1. At all times pertinent to this case, Defendant Robert Hood was the Warden at ADX and Defendant Mary Sosa was an assistant inmate systems manager working under his authority. At all times pertinent to this case, Defendant J.L. Norwood was the warden at Englewood, FCI and Defendant Roy Tucker an inmate systems officer working under his authority.

2. There are no remaining claims against Defendants W.A. Sherrod and Angela Shenk as plaintiff has voluntarily dismissed claims Nine, Ten and Eleven.

### A. Claim Four

3. On or about February 26, 2003, the book *Divas and Lovers - The Erotic Art of Studio Manasse* arrived for and addressed to plaintiff at the ADX.

4. Defendant Mary H. Sosa, the ADX Acting Assistant Inmate Systems Manager, for Defendant Robert A. Hood, ADX Warden, rejected the book *Divas and Lovers* pursuant to 28 C.F.R. § 540.72 and Program Statement 5266.09, Incoming Publications, section 7, which implements the Ensign Amendment and contains identical language, alleging that all pages are sexually explicit or feature nudity (Exhibit 1).

5. The book *Divas and Lovers* contains depictions of nudity (*See* Exhibit 3).

6. The book *Divas and Lovers* was rejected solely because its content is sexual and offensive to the Ensign Amendment.

7. On or about March 19, 2003, plaintiff appealed Defendant Sosa's rejection of the book *Divas and Lovers* to Defendant Hood by filing a BP-9, Administrative Remedy Request, through the BOP Administrative Remedy Program, which Defendant Hood denied on March 31, 2003 (Exhibit 2).

8. Plaintiff's final administrative appeal from Defendants Sosa and Hood's rejection of the book *Divas and Lovers* was denied June 19, 2003 by the BOP National Inmate Appeals Administrator (NIAA) (Exhibit 2, p. 8).

9. As a result, plaintiff did not receive the publication *Divas and Lovers.*

**B. Claim Five**

10. On or about April 15, 2004, the May/June 2004 issue of *JUXTAPOZ* Art and Culture Magazine arrived for and addressed to plaintiff at ADX.

11. On or about April 15, 2004, Defendant Sosa, for Defendant Hood, rejected the May/June 2004 issue of *JUXTAPOZ* Art & Culture Magazine pursuant to 28 C.F.R. § 540.72 and Program Statement 5266.10, section 7, alleging that pages 10, 48, 51, 70, 74, 76, 81, 98, 101 and 105 are sexually explicit or feature nudity (Exhibit 4).

12. The May/June 2004 issue of *JUXTAPOZ* Art & Culture Magazine contains non-photographic and cartoon renderings of nudity (See Exhibit 7).

13. The May/June 2004 issue of *JUXTAPOZ* Art & Culture Magazine was rejected solely because its content offends the Ensign Amendment.

14. On or about April 28, 2004, plaintiff appealed Defendant Sosa's rejection of the May/June 2004 issue of *JUXTAPOZ* Art & Culture Magazine to Defendant Hood by filing a BP-9, which was denied by Defendant Hood on May 7, 2004 (Exhibit 5).

15. Plaintiff's final administrative appeal of Defendant Sosa and Hood's rejection of the May/June 2004 issue of *JUXTAPOZ* Art & Culture Magazine was denied by the BOP NIAA on or about July 13, 2004 (Exhibit 5, p. 7).

16. As a result, plaintiff did not receive the May/June 2004 issue of *JUXTAPOZ* Art & Culture Magazine.

**C. Claim Six**

17. On or about May 21, 2004, the July/August 2004 issue of *JUXTAPOZ* Art & Culture Magazine arrive for and addressed to plaintiff at ADX.

18. On or about May 21, 2004, Defendant Sosa, for Defendant Hood, rejected the July/August 2004 issue of *JUXTAPOZ* Art & Culture Magazine pursuant to 28 C.F.R. § 540.72 and Program Statement 5266.10, section 7, alleging that page 61 is sexually explicit or features nudity (Exhibit 8).

19. Page 61 of the July/August 2004 issue of *JUXTAPOZ* Art & Culture Magazine contains a rendering of nudity (Exhibit 11).

20. The July/August 2004 issue of *JUXTAPOZ* Art & Culture Magazine was rejected solely because a page of its content offends the Ensign Amendment.

21. On or about June 4, 2004, plaintiff appealed Defendant Sosa'a rejection of the July/August 2004 issue of *JUXTAPOZ* Art & Culture Magazine by filing a BP-9, which was denied by Defendant Hood on June 17, 2004 (Exhibit 9, p. 3).

22. Plaintiff's final administrative appeal of Defendants Sosa and Hood's rejection of the July/August 2004 issue of *JUXTAPOZ* Art & Culture Magazine was denied on or about July 12, 2004 by the BOP NIAA (Exhibit 9, p. 5)..

23. As a result, plaintiff did not receive the July/August 2004 issue of *JUXTAPOZ* Art & Culture Magazine.

**D.  Claim Eight**

24. On or about August 15, 2004, a book titled *Kama Sutra* arrived for and addressed to plaintiff at the FCI Englewood, Colorado.

25. On or about August 15, 2004, Defendant Roy Tucker, FCI Englewood Inmate Systems Officer, rejected the book titled *Kama Sutra* pursuant to 28 C.F.R. § 540.72 and Program Statement 5266.10, section 7, alleging that depictions within the book are sexually explicit and feature nudity.

26. The classic 4th Century publication known as *Kama Sutra* has serious educational, literary, and artistic value and is religious and anthropological in nature, but as explained below, there is no evidence that the book sent to plaintiff in August 2004 was the classic publication.

27. On or about September 15, 2004, plaintiff appealed Defendant Tucker's rejection of the book *Kama Sutra* to Defendant J. L. Norwood, FCI Englewood Warden, by filing a BP-9, which Defendant Norwood denied on September 23, 2004.

28. Plaintiff's final administrative appeal from Defendants Tucker and Norwood's rejection of the book *Kama Sutra* was denied on or about January 27, 2005, by the BOP NIAA.

29. As a result, plaintiff did not receive the publication *Kama Sutra*.

**E. Trial Testimony**

30. Prisoners confined at ADX are permitted to draw, sketch, and paint images and depictions identical or similar to those otherwise prohibited by the Ensign Amendment (Plaintiff's testimony).

31. Prisoners throughout the BOP generally enjoy basic cable television programming that regularly depicts nudity and sexually explicit material that would be banned by the Ensign Amendment in the case of commercial publications (Testimony of plaintiff). Moreover, it appears that if commercially published information and material that features nudity and is sexually explicit was received by the inmate at ADX prior to the effective date of the BOP regulation implementing the Ensign Amendment, the inmate has been permitted to be retain such materials (Testimony of Mary Sosa).

33. BOP prisoners are also regularly furloughed, during which time they are not prohibited from viewing nudity or sexually explicit material, or even in engaging in sexually explicit conduct with others. Indeed, a popular activity during and reason for

approval of furloughs is to facilitate prisoner marriages to those in the community (Testimony of plaintiff).

34.  Bureau prisoners are also permitted to receive or write and mail sexually explicit letters.  They may also read sexually explicit text.  These words and text may conjure up images no different than the images themselves.  Inmates are permitted, and sometimes instructed by medical personnel, to masturbate privately in their cells.  They have access to various other sexually suggestive material, including commercial publications, although they do not depict actual nudity or sexually explicit conduct (Testimony of plaintiff and Dr. Andres Hernandez).

35.  The evidence also demonstrates that plaintiff is not confined for being a sex offender.  However, due to his prison history he is in solitary confinement in the "Control Unit" at the nations's most secure federal facility, where he enjoys no physical contact with or access to fellow prisoners.  Plaintiff suggests that his isolation from fellow inmates renders unnecessary the application of the Ensign Amendment and its implementing regulation because he has no opportunity to engage in the potential violence or dangerous conduct which the defendants argue may result from exposure to the prohibited materials.  He also suggests that because of his isolation he has no opportunity to exchange materials with other prisoners (Testimony of plaintiff).

36.  The defendants presented evidence through their expert witness, Dr. Andres E. Hernandez, a professional psychologist employed by the Bureau of Prisons, that the

exclusion of publications that contain sexually explicit material and depict nudity are reasonably related to the legitimate penological interests of rehabilitation and security.

37. Specifically, Dr. Hernandez testified that the receipt of publications that are sexually explicit and depict nudity by inmates would hinder their rehabilitation, especially if they are sex offenders. He testified that the receipt of such material has a tendency to perpetuate the negative attitudes and behaviors of all inmates, who generally consider people to be mere objects. Preventing inmates from receiving pictures that are sexually explicit or depict nudity assists in changing this mind set replacing it with pro-social attributes, values and behaviors.

38. He further testified that restricting inmate access to depictions of nudity and sexually explicit material reduces an inmate's urge for sexual acts and sexual violence and reduces the propensity to act out within the prison walls. Viewing such material increases an inmate's urge to engage in sexual acts or violence towards other inmates and staff, especially female staff, thereby threatening prison security and the safety of all concerned. Keeping such material out of the prison may also insulate the female staff of the institution from suffering unwanted exposure to sexually explicit material and publications featuring nudity, which may contribute to a demise of the staff morale.

39. Even if the questionable material were kept only from sex offenders but allowed to non-sex offenders, as plaintiff suggests, Dr. Hernandez testified that such a result may lead to the creation of groups of "haves" and have nots" within the prison walls, leading to a potential exchange of contraband further threatening the security of

the prison.  The evidence at trial also showed that despite the best efforts of the staff at ADX, contraband and other prohibited materials that do find their way into the institution are exchanged among the prisoners at ADX notwithstanding regulations banning such exchanges (Testimony of LeAnn LaRiva).

40.  I find the testimony of Dr. Hernandez to be credible and persuasive.

41.  Plaintiff argues that there is no "individualized determination that a particular publication rejection is reasonably related to a legitimate penological interest."  I find, however, that there are individualized determinations made as to each publication rejected under the Ensign Amendment and its implementing regulation.  Indeed, as plaintiff himself has alleged, administrative review was undertaken in connection with each of the four publications as to which he is making claims; plaintiff was permitted to appeal the administrative decisions and exhaust his remedies; and in at least two occasions, both involving the issues of JUXTAPOZ, it appears that the determination to exclude was made with respect to particular pages of the magazine indicating individualized evaluation of the publication (*See* Claim Five, ¶ 61 of complaint).

42.  However, I also find that the administration at ADX, pursuant to the BOP program statement 5266.10, section 7 (Exhibit 29, pp. 6-7), does not retain the entirety of the publications rejected under the implementing regulation during the period of an inmate's appeal, but only the cover of the rejected publication and the pages within the publication deemed to contain sexually explicit material or nudity that offends the Ensign Amendment and its implementing regulation (Sosa Testimony).  As a result, it is not

possible upon administrative review of the rejection decision to review the publication as a whole, or to evaluate the questionable material in the context of the entire publication. When the rejection is based on the content supposedly featuring nudity, it is difficult, if not impossible, to evaluate whether the nudity "has serious educational, literary, and artistic value and is religious and anthropological in nature" if the publication as a whole is not available.

43.  I further find that this problem is graphically illustrated by the events in this case relating to the rejection of the publication *Kama Sutra*.  Plaintiff seemingly asserted that the publication which was sent to him unsolicited at FCI Englewood in August 2004, was the classic work from the 4th Century (*See* complaint at ¶ 90).  He alleged, and the defendants admitted in their answer, that the 4th Century book "has serious educational, literary, and artistic value and is religious and anthropological in nature." (*Id.* at ¶ 90; Answer (Dkt. # 67) at  ¶ 90).  However, a copy of the publication was apparently not retained by FCI Englewood pursuant to program statement  5266.10, section 7.

44.  It was also unclear at trial whether even a copy of the cover or offending pages of the work were retained at by the BOP.  The rejection notice provided to plaintiff apparently stated that the work was "distributed by Mosaico Books," (Complaint at ¶ 88; Answer at  ¶ 88).  However, the rejection notice for this work was not introduced into evidence at trial.

45.  The parties advised me at trial that during discovery defendants were directed to provide plaintiff with a copy of the *Kama Sutra* work that had been received at FCI Englewood in August 2004 and rejected.  The defendants obtained a publication titled "*The Kama Sutra*," authored or edited by Anne Hooper (Exhibit 48), and made a copy available to the plaintiff.  This work is not the classic 4th Century work known as *Kama Sutra,* but rather is a work containing photographs of models depicting the sexually explicit positions illustrated in the classic work, and containing some of the illustrations from the classic work.  It was obvious at the trial that this is not the work referenced in plaintiff's complaint, nor is it the work admitted by defendants to contain serious educational, literary, and artistic value and is religious and anthropological in nature.  Moreover, Exhibit 48 does not bear any indication that it is distributed by Mosaico Books.

46.  Accordingly, because defendants did not retain a copy of the publication, it is entirely unclear whether Exhibit 48 is in fact the book that arrived at FCI Englewood in August 2004.  Therefore it is not possible to meaningfully review the BOP's determination that the publication sent to the plaintiff in August 2004 is excludable under the Ensign Amendment and its implementing regulation.

## III.  CONCLUSIONS OF LAW

An inmate's constitutional rights may be limited to the extent necessary to achieve the essential goals of prison security, order and discipline.  *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979).  When the rights are limited by regulation, the person

14

challenging the regulation bears the burden of proving it is unconstitutional.  *See*

*Overton v. Bazzetta*, 539 U.S. 126 (2003).

Prison regulations that restrict the receipt of mail by inmates do not violate the

First Amendment if they are reasonably related to legitimate penological interests.

*Thornburgh v. Abbott*, 490 U.S. 401, 413-19 (1989); *Turner v. Safley*, 482 U.S. 78, 89

(1987); *Jones v. Salt Lake County*, 503 F.3d 1147, 1153 (10th Cir. 2007).  The

four-factor *Turner* test is used to make this determination.[1]  First, a court

must determine if there is a valid rational connection between the regulation and the

legitimate government interest put forth to justify it.  When a regulation restricts an

inmate's First Amendment rights it must be neutral, meaning that the regulation furthers

an important or substantial government interest unrelated to the suppression of

expression.  *Thornburgh*, *supra*, 490 U.S. at 415.

If the court determines that a valid rational connection exists, then it must

consider three other factors in determining whether the regulation is reasonable.  These

three factors are: (1) whether inmates retain alternative means of exercising their First

Amendment rights; (2) the burden on prison resources that would be imposed by

---

[1]  I reject plaintiff's suggestion that the *Turner* standard is not applicable here because the Ensign Amendment is a statute, whereas *Turner* and *Thornburgh* addressed prison regulations (Plaintiff's Trial Brief at 1-2).  I do not read *Padgett v. Donald*, 401 F.3d 1273, 1281 n.7 (11th Cir. 2005) to provide for a different constitutional analysis based on the type of governmental action that allegedly infringes the right in the context of a case such as this.

accommodating the right; and, (3) whether there are alternatives to the regulation that can accommodate the right at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89-91.

Defendants have argued, and I agree, that the restriction of sexually explicit publications in a federal prison setting is reasonably related to the legitimate penological interests of rehabilitation of inmates and security of the institution as a whole. *See Jones v. Salt Lake County*, *supra*, 503 F.3d at 1155-56 (upholding county jail regulation barring inmates from receiving "sexually explicit material."). I further find and conclude that in the context of applying the Ensign Amendment and its implementing regulation, defendants have not run afoul of the First Amendment limitation that prohibits the regulation from being enforced in a non-neutral manner. Although application of the Ensign Amendment and its implementing regulation are, to be sure, determined by the contents of the excluded publication, I find that the purpose of the restriction is not to suppress expression but to further the legitimate governmental interest in prisoner rehabilitation and institutional security. *See Thornburgh, supra,* 490 U.S. at 415-16 ("Where, as here, prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are "neutral" in the technical sense in which we meant and used that term in *Turner*.").

Plaintiff suggests that the Ensign Amendment and its implementing regulation are unconstitutional because they irrationally only include "commercially published information," while not including privately distributed information. As the Tenth Circuit

stated in *Mainstream Marketing Services, Inc., v. F.T.C.*, 358 F.3d 1228, 1238 (10th Cir. 2004): "First Amendment challenges based on underinclusiveness face an uphill battle in the commercial speech context. As a general rule, the First Amendment does not require that the government regulate all aspects of a problem before it can make progress on any front." Although the first statement may have been intended to apply in the context of government regulation of commercial speech, the policy rationale in the second sentence applies equally in the context of regulating publications that may enter prisons. The fact that Congress and the BOP chose to first regulate the readily identifiable commercially published sexually explicit material does not render the statute and regulation unconstitutional.

I also conclude that the federal inmates at ADX retain alternative means of exercising their First Amendment rights. As noted above, and as argued by plaintiff, despite the ban on sexually explicit material, other types of publications that relate to sexual content are permitted in the institution. According to plaintiff, inmates may receive novels that contains written depictions, but not pictures of, sexual scenes; they may view cable television programs that depict sexual activity, and they may draw, sketch or paints depictions of sexual activity. Although plaintiff argues that permitting such activities is inconsistent with the defendants' asserted interest in rehabilitation and prison security, I find that allowing some outlets reasonably satisfies the second prong of the *Turner* test by providing some avenue for the exercise of the asserted right. *See Jones v. Salt Lake County*, *supra*, 503 F.3d at 1156.

I further find and conclude that accommodating plaintiff's asserted constitutional

right would place an undue burden on prison resources and possibly threaten the

security in the prison as well as the safety of the guards and inmates. As the Tenth

Circuit stated in *Jones, supra,* quoting from *Turner* :

> In the necessarily closed environment of the correctional institution, few
> changes will have no ramifications on the liberty of others or on the use of
> the prison's limited resources for preserving institutional order. When
> accommodation of an asserted right will have a significant ripple effect on
> fellow inmates or on prison staff, courts should be particularly deferential
> to the informed discretion of corrections officials.

503 F.3d at 1153. This statement is especially applicable here, and relates also to

consideration of the fourth *Turner* factor.

Plaintiff argues that since he is in solitary confinement, where he has no contact

with other prisoners, and where his contact with the guards is under tight supervision,

the danger of his becoming violent or engaging in the antisocial behavior that may arise

from exposure to sexually explicit material is minimized or non-existent. However, I

note and conclude that if plaintiff alone were permitted access to sexually explicit

material, without providing access to other inmates, there well may be a "significant

ripple effect" on fellow inmates and the prison staff. First, should word get out in the

prison that an inmate locked in solitary confinement is allowed access to such material,

it could serve as an inducement to other inmates to engage in the type of behavior that

landed plaintiff in solitary confinement. According to defendants, he is in solitary

confinement because he was convicted of murdering a fellow inmate while already

incarcerated in a federal prison.  Second, given his proven inclination towards violence, and even giving plaintiff the benefit of the doubt that such violence may have been provoked by an act of the fellow inmate victim, exposing plaintiff to materials that may again provoke a violent reaction is neither conducive to his rehabilitation, nor safe to the inmates or staff of the prison.  Moreover, the fact that plaintiff may be serving a lengthy term in prison, or in solitary confinement, does not eliminate the need for his rehabilitative needs to be treated as any other inmate in the ADX facility.  Exempting him from the ban on sexually explicit materials could undermine plaintiff's rehabilitation and the BOP's plan for his rehabilitation.

Furthermore, there is evidence that despite the best efforts of the staff at ADX, contraband and other prohibited materials that do find their way into the institution are exchanged among the prisoners at ADX.  Were the questionable materials allowed to be received by plaintiff, the risk of their being circulated in the prison undermines the feasibility of his proposed alternative.  Accordingly, I do not find that there is an alternative that accommodates plaintiff's desires, while imposing only a *de minimis* cost to the valid penological interests.

For the reasons set forth above, I find and conclude that the application of the Ensign Amendment, and its implementing regulation, to limit the introduction of sexually explicit material and publications featuring nudity into the federal institution at ADX does not generally violate plaintiff's rights under the First Amendment, either on its face or as particularly applied to him, as alleged in plaintiff's First and Third claims.

Plaintiff is correct that both inmates and publishers have a right to procedural due process when publications are rejected.  *Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004).  I find and conclude that those due process rights are generally met here, with one exception.

First, the implementing regulation requires an individualized determination that each publication either contains sexually explicit material or features nudity.  *See Thornburgh, supra*, 490 U.S. at 416-17.  Second, the regulation requires that the publisher or sender of the item receive notification of the rejection, and advise it of the opportunity to seek an independent review of the decision.  *See Jacklovich, supra*, 392 F.3d at 433.  Third, the regulation provides the inmate with written notice of the action, and although not made explicit in the implementing regulation, the inmate has the right to appeal the determination through the administrative process, as plaintiff has done here.  *See Strope v. Collins*, 492 F. Supp. 2d 1289, 1298 (D. Kan 2007).  Accordingly, I find and conclude that plaintiff's due process rights are not generally infringed by the Ensign Amendment or its implementing regulation.

However, as noted above, I am troubled by the provision in program statement 5266.10, section 7, that permits the institution to return the publication rejected under the Ensign Amendment and its implementing regulation to the publisher prior to completion of the administrative review.  I specifically note that under section 6 of the same program statement, published material that is rejected from delivery to inmates under 28 C.F.R. §540.71(b)(7), which provides for rejection of material that "is sexually

explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity" is retained pursuant to section 6 of the program statement if the inmate files an appeal from that determination (*See* Exhibit 29 at p. 6).  However, if the material is rejected under section 7, retention of the material is not provided for (*See* Exhibit 29 at p. 7; "under . . . this section there is no need to delay return of non-distributable publications or materials even when an inmate files an appeal.").

As explained above, such failure to retain the entire publication may render administrative review meaningless if the publication as a whole can not be considered on review.  Such practice, as it denies meaningful review on appeal, denies due process to plaintiff.  The plaintiff is entitled to declaratory and injunctive relief as to this aspect of his second claim for relief.

I note the guidance of the Supreme Court in *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006), which holds that a district court may, and should, tailor its remedies to "unconstitutional applications" or a defective statute or regulation even in the context of a facial challenge.  With this guidance in mind, I conclude that program statement 5266.10, section 7 is unconstitutional to the extent it permits the institution to return the publication rejected under the Ensign Amendment and its implementing regulation to the publisher prior to completion of the administrative review.

Pursuant to and as required by 18 U.S.C. § 3626(a)(1), I specifically find and conclude that the prospective relief granted herein is narrowly drawn, extends no further than necessary to correct the violations of the federal constitutional right asserted by Mr. Jordan, and is the least intrusive means necessary to correct the violation of the federal constitutional right. I have, additionally, given substantial weight to any adverse impact on public safety and the operation of the federal criminal justice system caused by the relief.

As indicated in *Thornburgh, supra*, even when a regulation is constitutional on its face and as generally applied, there remains the issue of whether the regulation is properly applied to the individual publications at issue. 490 U.S. at 419. Absent a finding that a particular publication meets the conditions that justify its exclusion under the Ensign Amendment, and its implementing regulation, it should not be rejected even if the statute and regulation are otherwise constitutional.

I further note that the review of a determination to reject any particular publication is a matter of administrative review, rather than an issue of constitutional dimension. Although plaintiff has not expressly filed an administrative appeal from the defendants' determinations, liberally construing his *pro se* complaint as I must, I find that in his four separate claims he also apparently challenges the determination of the defendants that the application of the Ensign Amendment, and its implementing regulation, justifies rejection of the four individual publications that were rejected.

With respect to the publications at issue in Claims Four, Five and Six, the parties apparently have stipulated that the publications at issue meet the regulatory requisite to justify exclusion, namely that each publication features nudity. *See* Stipulations (Dkt # 197) Stipulations at ¶¶ 5, 12, and 19; Findings of Fact, *supra*, ¶¶ 5, 12, and 19. Moreover, no evidence was introduced that these publications have "serious educational, literary, and artistic value" or are "religious and anthropological in nature." Accordingly, as to plaintiff's fourth, fifth and sixth claims, I find no basis to overturn the administrative decision.

However, noticeably absent from the stipulations are references that the book *Kama Sutra*, addressed in plaintiff's eighth claim, either contains material which is sexually explicit or features nudity. As noted above, the parties stipulated that *Kama Sutra* "has serious educational, literary, and artistic value and is religious and anthropological in nature." *See* Stipulations (Dkt. # 197 at ¶ 26; Findings of Fact, *supra*, ¶ 26.

Nonetheless, as explained above, the publication introduced into evidence at trial, Exhibit 48, is not the classic 4th Century version of the *Kama Sutra* as to which plaintiff pled in his complaint (albeit unwittingly) and is not the publication the parties had in mind when they entered into this stipulation. If indeed Exhibit 48 is the publication that was rejected, the burden is on the plaintiff to demonstrate that the defendants erred in excluding this book under the regulation. He has not met that burden here.

Accordingly, I find that plaintiff has not shown that he is entitled to relief with respect to his eighth claim for relief.

## IV. CONCLUSION

Plaintiff has failed to established that the Ensign Amendment, or its implementing regulation, 28 C.F.R. § 540.72, violate his First Amendment rights either facially or applied to him, and therefore the declaratory relief sought in his First and Third Claims for Relief is DENIED.  The Clerk will forthwith enter judgment in favor of Defendants and against Plaintiff on the First and Third Claims for Relief, dismissing those claims with prejudice.

Plaintiff has failed to established that the defendants' determination that the publications rejected as alleged in his Fourth, Fifth, Sixth and Eighth Claims for Relief were improperly excluded under the Ensign Amendment, or its implementing regulation, and therefore the declaratory relief sought in his Fourth, Fifth, Sixth and Eighth Claims for Relief is DENIED.  The Clerk will forthwith enter judgment in favor of Defendants and against Plaintiff on the Fourth, Fifth, Sixth and Eighth Claims for Relief, dismissing those claims with prejudice.

Concerning the Second Claim for Relief, Plaintiff has failed to established that the Ensign Amendment, or its implementing regulation, as written, violate his Fifth Amendment rights to due process.  However, he has established that the provision of program statement 5266.10, section 7, that permits the institution to return the publication rejected under the Ensign Amendment and its implementing regulation to

the publisher prior to completion of the administrative review, does deprive the plaintiff of meaningful administrative review and therefore does not meet the requirements of due process.  Accordingly, Defendants are hereby enjoined from following or enforcing that provision of the program statement which permits the return of publications rejected under 28 C.F.R. § 540.72 prior to the completion of the inmate's request for administrative review.  In all other respects, the relief sought in the Second Claim for relief is DENIED.  Except as specifically mentioned in this paragraph, the Clerk will forthwith enter judgment in favor of Defendants and against Plaintiff on the Second Claim for Relief, dismissing such aspects of the claim with prejudice.

All parties are to bear their own costs.

SO ORDERED.

Dated: July 11, 2008.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge